# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

VININGS INSURANCE COMPANY,

        Plaintiff,

vs.

Case No.: 6:10-cv-601-Orl-22KRS

VALLERY CUSTOM HOMES, INC., a Florida
corporation; SETTING SUN ESTATES, LLC, a
Florida limited liability company; CHRISTOPHER
CLEGG; CAROLE CLEGG; FIRST COMMERCIAL
BANK OF FLORIDA, a Florida corporation; JEFF
DIBENEDETTO; MARK WANDMACHER;
MICHAEL SARACENO; KATHRYN SARACENO;
TIMOTHY O'CONNELL; WILLIAM E. NORTON;
BARBARA L. NORTON; KRISTIAN J. STARYNSKY;
KATHRYN J. STARYNSKY; GORDON FRASER;
TERESA FRASER; DALTON PASTORE, JR.;
PAMELA MESSNER PASTORE; GREYHOUND
INVESTMENTS LIMITED, LLC, an Isle of Mann
limited liability company; KIRK ETTER; GIFFORD
FOGGITT; PAUL HORROCKS; FRANK
D'ENTREMONT; JANET D'ENTREMONT;
CLIFFORD M. MILLER, ELIZABETH A. MILLER;
HERBERT W. WOODBERY; STEVEN J. LOVEMAN;
LINDA I. LOVEMAN; RLS REUNION, LLC, a New
Jersey limited liability company; MARK R. PURDY;
LORRAINE E. PURDY; JANICE M. GENTILE;
ADAM J. TAYLOR; KENNETH KUBIESA;
COLETTE M. KUBIESA; EMG MORTGAGE
CORP., a Delaware corporation; COMRECO I LL, a
Florida limited liability company; MELANI MORENO;
1223 MOLONA HOLDINGS, LLC, a Florida limited
liability company; DAVID P. BABINSKI, DEBORAH
BABINSKI, PARK REAL ESTATE VILLAGE AT
TOWN CENTER, LLC, a Texas limited liability
company; JONATHAN BRYAN; ANDREW STEWART;
CITIBANK, N.A., as Trustee for Structured Asset
Mortgage Investments II, Inc., Bear Sterns ALT-A Trust
Mortgage Pass-Through Certificates Series 2006-8;
HSBC BANK USA, N.A., as Trustee of Deutsche Alt-A
Securities Mortgage Loan Trust, Series 2007-1;

1

GERRY GALLAGHER; JENNY A. GALLAGHER;
DAVID LORD; DAVID GEORGE; RICHARD NAJOR;
GORDON NUTTALL; GILLIAN NUTTALL; DAVID
ROBERTS; JEREMY I. GOMEZ; GEANNYS GOMEZ;
OSCEOLA PROPERTIES, LLC, a Maryland limited
liability company; JEFFREY CAPRETTA; PETER PLANT;
NAOMI PLANT; DAVID HOLBROOK; ANGELA
HOLBROOK; CHARLES BARNETT; CHARLES
BURNETT; TAYLOR BURNETT; BARRY JOHN HOLT;
JOHN ASTLEY; PATRICIA ASTLEY; JOSEPH PEPE;
JULIE PEPE; WILLIAM ROBY, JR.; TERRY D. ROBY;
PEOPLES FIRST COMMUNITY BANK, now known as
HANCOCK BANK, a Mississippi corporation; DONNA
C. GRASTARA, as Trustee of the Grastara Living Trust;
IPS TRADE LIMITED, an Emirate of Dubai limited
liability company; KEVIN INGRAM, CLAIRE C.
INGRAM; MICHAEL J. BRUNO; BEVERLY L.
BRUNO; MICHAEL F. BARRY; PATRICIA A.
BARTLETT; STEVE FLETCHER; LISA J. FLETCHER,
DARRYL J. WILLIS; KAREN L. WILLIS; ANNE
BULLEID; IAN BULLEID; ALLAN WEBSTER;
CHRISTINE S. WEBSTER; WILLIAM G. PENNICK;
BRUNO AND CARMEN, LLC, a Maryland limited liability
company; MUIRFIELD REAL ESTATE, LLC, a Florida
limited liability company; PAUL DAVID CAMPBELL;
DONNA CAMPBELL; GWENDOLYN WORTHAM-
WADDY; IAIN JACKSON, ALICE JACKSON;
THOMAS W. PREECE; LYNNE PREECE; DAVID
OHAYON; ERIC SMITH; PENSCO TRUST COMPANY,
for the benefit of Dale R. Marshall ███████, Domenica
L. Marshall ███████ and Lucy M. Fero ███████;
DALE R. MARSHALL; DOMENICA L. MARSHALL;
37 LIBERTY BLUFF, LLC, a Florida limited liability
company; TIMOTHY JOHNSTON; JOHN COLLINS;
MICHAEL R. SKRABLE; LAURA A. SKRABLE;
L.O.D., LLC, a Delaware limited liability company,
MICHAEL MILLER; and SUSAN K. MILLER,

Defendants.

_____/


## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, VININGS INSURANCE COMPANY ("Vinings"), by and through its undersigned counsel, and files this Complaint for Declaratory Judgment, and states as follows:

1.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

## JURISDICTION

2.    At all material times, Plaintiff, Vinings is and was a South Carolina corporation, having its principal place of business in Atlanta, Georgia.

3.    At all material times, Defendant, Vallery Custom Homes, Inc. ("VCHI") is and was a Florida corporation, having its principal place of business in Clermont, Lake County, Florida.

4.    At all material times, Defendant, Setting Sun Estates, LLC ("SSE") is and was a Florida limited liability company, having its principal place of business in Clermont, Lake County, Florida.

5.    At all material times, Vallery Florida Holding Company, a Florida corporation with its principal place of business in Clermont, Lake County, Florida, was and is the sole managing member of SSE.

6.    At all material times, Defendants Christopher Clegg and Carole Clegg (hereafter "Clegg Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ███████████████████ Osceola County, Florida.

7.    At all material times, Defendant First Commercial Bank of Florida (hereafter "FCBF"), a Florida corporation with its principal place of business in Orlando, Florida, owned a residence located at ████████████████ Osceola County, Florida.

3

8.     At all material times, Defendant Jeff Dibenedetto (hereafter "Dibenedetto Defendant"), who is a citizen of and domiciled in Canada, owned a residence located at ████ ███████████████████ Osceola County, Florida.

9.     At all material times, Defendant Mark Wandmacher (hereafter " Wandmacher Defendant"), who is domiciled in the state of Florida, owned a residence located at ████████ ███████████████████ Osceola County, Florida.

10.     At all material times, Defendants Michael Saraceno and Kathryn Saraceno (hereafter "Saraceno Defendants"), who are domiciled in the state of Florida, owned a residence located at ████████████████ Osceola County, Florida.

11.     At all material times, Defendant Timothy O'Connell (hereafter "O'Connell Defendant"), who is domiciled in the state of Connecticut, owned a residence located at ████ ███████████████████ Osceola County, Florida.

12.     At all material times, Defendants William E. Norton and Barbara L. Norton (hereafter "Norton Defendants"), who are domiciled in the state of Florida, owned a residence located at ████████████████ Osceola County, Florida.

13.     At all material times, Defendants Kristian J. Starynsky, Kathryn J. Starynsky, Gordon Fraser, and Teresa Fraser (hereafter "Starynsky and Fraser ████████████ Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████████ Osceola County, Florida.

14.     At all material times, Defendants Dalton Pastore, Jr. and Pamela Messner Pastore (hereafter "Pastore Defendants"), who are citizens of and domiciled in the Federative Republic

of Brazil, owned a residence located at ██████████████████ Osceola County, Florida.

15.    At all material times, Defendant Greyhound Investments Limited, LLC (hereafter "Greyhound Defendant"), an Isle of Man limited liability company with its principal place of business in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████████ Osceola County, Florida.

16.    On information and belief, at all material times, John Guilford and Patricia Guilford, who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, were and are the managing members of the Greyhound Defendant.

17.    At all material times, Defendant Kirk Etter (hereafter "Etter Defendant"), who is domiciled in the state of Illinois, owned a residence located at ███████████ ███████ Osceola County, Florida.

18.    At all material times, Defendant Gifford Foggitt (hereafter "Foggitt Defendant"), who is domiciled in the state of Florida, owned a residence located at ███████████ ███████ Osceola County, Florida.

19.    At all material times, Defendant Paul Horrocks (hereafter "Horrocks Defendant"), who is a citizen of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ██████████████████ Osceola County, Florida.

20.    At all material times, Defendants Frank D'Entremont and Janet D'Entremont (hereafter "D'Entremont Defendants"), who are citizens of and domiciled in Canada, owned a residence located at ████████████████ Osceola County, Florida.

21.    At all material times, Defendants Clifford M. Miller and Elizabeth A. Miller, who are domiciled in the state of Florida, owned a residence located at ████████████ Kissimmee, Osceola County, Florida (hereafter "Miller ████████████ Defendants").

22.    At all material times, Defendant Herbert W. Woodbery (hereafter "Woodbery Defendant"), who is domiciled in the state of Florida, owned a residence located at ████████████ ████████████ Osceola County, Florida.

23.    At all material times, Defendants Steven J. Loveman and Linda I. Loveman (hereafter "Loveman Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████ ████████ Osceola County, Florida.

24.    At all material times, Defendant RLS Reunion, LLC (hereafter "RLS Reunion Defendant"), a New Jersey limited liability company, with its principal place of business in the state of New Jersey, owned a residence located at ████████████████ Osceola County, Florida.

25.    At all material times, RLS Family Partnership, L. P., a New Jersey Limited Partnership corporation with its principal place of business in the state of New Jersey, was and is the sole managing member of the RLS Reunion Defendant.  The general partner of the RLS Family Partnership, L. P. is Loretta M. Stratton, who is domiciled in the state of New Jersey.  On information and belief, the limited partners of the RLS Family Partnership, L. P., are also domiciled in the state of New Jersey and are not domiciled in either the states of Georgia or South Carolina.

26.    At all material times, Defendants Mark R. Purdy and Lorraine E. Purdy (hereafter "Purdy Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain

and Northern Ireland, owned a residence located at ██████████████████ Osceola County, Florida.

27.     At all material times, Defendant Janice M. Gentile (hereafter "Gentile Defendant"), who is domiciled in the state of Pennsylvania, owned a residence located at ██ ██████████████ Osceola County, Florida.

28.     At all material times, Defendant Adam J. Taylor (hereafter "Taylor Defendant"), who is a citizen of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ██████████████ Osceola County, Florida.

29.     At all material times, Defendant Kenneth Kubiesa and Colette M. Kubiesa (hereafter "Kubiesa Defendants"), who are domiciled in the state of Illinois, owned a residence located at ██████████████ Osceola County, Florida.

30.     At all material times, Defendant EMC Mortgage Corp., a Delaware corporation with its principal place of business in Texas, owned a residence located at ██████████████ ██████ Osceola County, Florida (hereafter "EMC Mortgage ██████████ Defendant").

31.     At all material times, Defendant Comreco I LLC (hereafter "Comreco I LLC Defendant"), a Florida limited liability company with its principal place of business in Florida, owned a residence located at ██████████████ Osceola County, Florida.

32.     At all material times, Walid Costandi, who is domiciled in Florida, was and is one of two managing members of the Comreco I LLC Defendant.  Wisam Costandi, who is domiciled in California, was and is the other managing member of the Comreco I LLC Defendant.

33.    At all material times, Defendant Melani Moreno (hereafter "Moreno Defendant"), who is domiciled in the state of Florida, owned a residence located at ███████████ ███████ Osceola County, Florida.

34.    At all material times, Defendants Kristian J. Starynsky, Kathryn J. Starynsky, Gordon Fraser, and Teresa Fraser, who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ██████████████████ Osceola County, Florida (hereafter "Starynsky and Fraser ██████████ Defendants").

35.    At all material times, Defendant 1223 Molona Holdings, LLC (hereafter "1223 Molona Holdings, LLC Defendant"), a Florida limited liability company with its principal place of business in Florida, owned a residence located at ██████████████████ Osceola County, Florida.

36.    At all material times, Susan Lynch, Charles Lynch, Noreene Carlson and Howard Carlson, who are domiciled in the state of Connecticut, were and are the managing members of the 1223 Molona Holdings, LLC Defendant.

37.    At all material times, Defendants David P. Babinski and Deborah Babinski (hereafter "Babinski Defendants"), who are domiciled in the state of Florida, owned a residence located at ██████████████████ Osceola County, Florida.

38.    At all material times, Defendant Park Real Estate Village at Town Center, LLC (hereafter "Park Real Estate Defendant"), a Texas limited liability company with its principal place of business in Texas, owned a residence located at ██████████████████ Osceola County, Florida.

39.    At all material times, Park Real Estate LLC, a Texas limited liability company with its principal place of business in the state of Texas, was and is the sole managing member of

the Park Real Estate Defendant.  The sole managing member of Park Real Estate LLC is Austin

Capital LLC, a Texas limited liability company with its principal place of business in the state of

Texas.  The sole managing member of Austin Capital LLC is Bryan T. Forman, who is

domiciled in the state of Texas.

40.     At all material times, Defendants Jonathan Bryan and Andrew Stewart (hereafter

"Bryan and Stewart Defendants"), who are citizens of and domiciled in the United Kingdom of

Great Britain and Northern Ireland, owned a residence located at ███████████████

████████ Osceola County, Florida.

41.     At all material times, Defendant Citibank N. A., as Trustee for Structured Asset

Mortgage Investments II Inc., Bear Stearns Alt-A Trust Mortgage Pass-Through Certificates

Series 2006-8 (hereafter "Citibank Defendant") owned a residence located at ██████████

████████ Osceola County, Florida.

42.     Defendant Citibank, N. A. is a national banking association organized under the

laws of the United States, with its principal place of business in Las Vegas, Nevada.

43.     At all material times, Defendant HSBC Bank USA N. A., as Trustee of Deutsche

Alt-A Security Mortgage Loan Trust Series 2007-1 (hereafter "HSBC Defendant"), owned a

residence located at ████████████████████ Osceola County, Florida.

44.     Defendant HSBC Bank USA, N. A. is a national banking association organized

under the laws of the United States, with its principal place of business in McLean, Virginia.

45.     At all material times, Defendants Gerry Gallagher and Jenny A. Gallagher

(hereafter "Gallagher Defendants"), who are citizens of and domiciled in the United Kingdom of

Great Britain and Northern Ireland, owned a residence located at ████████████████

Osceola County, Florida.

46. At all material times, Defendant David Lord (hereafter "Lord Defendant"), who is domiciled in the state of Colorado, owned a residence located at ██████████ Osceola County, Florida.

47. At all material times, Defendants David George and Richard Najor (hereafter "George and Najor Defendants"), who are domiciled in the state of Michigan, owned a residence located at ██████████ Osceola County, Florida.

48. At all material times, Defendants Gordon Nuttall and Gillian Nuttall (hereafter "Nuttall Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ██████████ Osceola County, Florida.

49. At all material times, Defendant David Roberts (hereafter "Roberts Defendant"), who is a citizen of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ██████████ Osceola County, Florida.

50. At all material times, Defendants Jeremy I. Gomez and Geannys Gomez (hereafter "Gomez Defendants"), who are domiciled in the state of Florida, owned a residence located at ██████████ Osceola County, Florida.

51. At all material times, Defendant Osceola Properties, LLC (hereafter "Osceola Properties Defendant"), a Maryland limited liability company with its principal place of business in Maryland, owned a residence located at ██████████ Osceola County, Florida.

52. At all material times, William J. Ochall, who is domiciled in the state of Maryland, was and is the sole managing member of the Osceola Properties Defendant.

10

53.    At all material times, Defendant Jeffrey Capretta (hereafter "Capretta Defendant"), who is domiciled in the state of New York, owned a residence located at ███ ██████████████████████ Osceola County, Florida.

54.    At all material times, Defendants Peter Plant and Naomi Plant (hereafter "Plant Defendants"), who are domiciled in the state of Florida, owned a residence located at ███ ██████████████████████ Osceola County, Florida.

55.    At all material times, Defendants David Holbrook and Angela Holbrook (hereafter "Holbrook Defendants") , who are domiciled in the state of Utah, owned a residence located at ██████████████████████ Osceola County, Florida.

56.    At all material times, Defendants Charles Burnett, Taylor Burnett, and Barry John Holt (hereafter "Burnett and Holt Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ███ ██████████████████████ Osceola County, Florida.

57.    At all material times, Defendants John Astley and Patricia Astley (hereafter "Astley Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ██████████████████████ Osceola County, Florida.

58.    At all material times, Defendants Joseph Pepe and Julie Pepe (hereafter "Pepe Defendants"), who are domiciled in the state of Florida, owned a residence located at ███ ██████████████████████ Osceola County, Florida.

59.    At all material times, Defendants William Roby, Jr. and Terry D. Roby (hereafter "Roby Defendants") , who are domiciled in the state of Kentucky, owned a residence located at ██████████████████████ Osceola County, Florida.

11

60.     At all material times, Defendant Peoples First Community Bank, now known as Hancock Bank, a Mississippi corporation with its principal place of business in Gulfport, Mississippi, (hereafter "PFCB Defendant") owned a residence located at ███████████ ███████ Osceola County, Florida.

61.     At all material times, Defendant Donna C. Grastara, who is domiciled in the state of New Jersey, as Trustee of the Grastara Living Trust,  (hereafter "Grastara Defendant") owned a residence located at ██████████████ Osceola County, Florida.

62.     At all material times, Defendant IPS Trade Limited, a limited liability company organized under the laws of Emirate of Dubai with its principal place of business in the Netherlands (hereafter "IPS Trade Limited Defendant"),  owned a residence located at ███ ██████████████ Osceola County, Florida.

63.     On information and belief, at all material times, Adrian Gerard Zondervan, who is domiciled in the Netherlands, was and is the sole managing member of the IPS Trade Limited Defendant.

64.     At all material times, Defendants Kevin Ingram and Claire C. Ingram (hereafter "Ingram Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████████ Osceola County, Florida.

65.     At all material times, Defendants Michael J. Bruno and Beverly L. Bruno (hereafter "Bruno Defendants"), who are domiciled in the state of Maryland, owned a residence located at ████████████████ Osceola County, Florida.

66.    At all material times, Defendants Michael F. Barry and Patricia A. Bartlett (hereafter "Barry and Bartlett Defendants"), who are domiciled in the state of Pennsylvania, owned a residence located at ████████████████ Osceola County, Florida.

67.    At all material times, Defendants Steve Fletcher and Lisa J. Fletcher (hereafter "Fletcher Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████████ Osceola County, Florida.

68.    At all material times, Defendants Darryl J. Willis and Karen L. Willis (hereafter "Willis Defendants"), who are domiciled in the state of California, owned a residence located at ████████████████ Osceola County, Florida.

69.    At all material times, Defendants Anne Bulleid and Ian Bulleid (hereafter "Bulleid Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████████ Osceola County, Florida.

70.    At all material times, Defendants Allan Webster and Christine S. Webster (hereafter "Webster Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████████ Osceola County, Florida.

71.    At all material times, Defendants William G. Pennick and Hazel A. Pennick (hereafter "Pennick Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ████████████████ Osceola County, Florida.

72.    At all material times, Defendant Bruno and Carmen, LLC (hereafter "Bruno and Carmen LLC Defendant"), a Maryland limited liability company with its principal place of business in Maryland, owned a residence located at ███████████████ Osceola County, Florida.

73.    At all material times, Patrick J. Carmen, Mark P. Carmen, Grace E. Carmen, Sandra S. Carmen and Deborah J. Bruno, who are domiciled in the state of Maryland, were and are the managing members of the Bruno and Carmen LLC Defendant.

74.    At all material times, the PFCB Defendant owned a residence located at ██ ████████████████ Osceola County, Florida.

75.    At all material times, Defendant Muirfield Real Estate, LLC (hereafter "Muirfield Real Estate, LLC Defendant"), a Florida limited liability company with its principal place of business in Florida, owned a residence located at ███████████████ Osceola County, Florida.

76.    At all material times, Eric Chen and Jack J. Chen, who are domiciled in the state of Florida, were and are the managing members of the Muirfield Real Estate LLC Defendant.

77.    At all material times, Defendants Paul David Campbell and Donna Campbell (hereafter "Campbell Defendants"), who are domiciled in the state of New York, owned a residence located at █████████████ Osceola County, Florida.

78.    At all material times, the PFCB Defendant owned a residence located at ██ ███████████████ Osceola County, Florida.

79.    At all material times, Defendant Gwendolyn Wortham-Waddy (hereafter "Wortham-Waddy Defendant"), who is domiciled in the state of Florida, owned a residence located at ██████████████ Osceola County, Florida.

14

80.    At all material times, Defendants Iain Jackson and Alice Jackson (hereafter "Jackson Defendants"), who are citizens of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ███████████████ Osceola County, Florida.

81.    At all material times, Defendants Thomas W. Preece and Lynne Preece (hereafter "Preece Defendants"), who are domiciled in the state of Florida, owned a residence located at ███████████████ Osceola County, Florida.

82.    At all material times, Defendant David Ohayon (hereafter "Ohayon"), who is a citizen of and domiciled in the State of Israel, owned a residence located at ████████ ████████ Osceola County, Florida.

83.    At all material times, Defendant Eric Smith (hereafter "Smith Defendant"), who is domiciled in the state of Florida, owned a residence located at ████████ ██████ Osceola County, Florida.

84.    At all material times, Defendants Pensco Trust Company, for the benefit of Dale R. Marshall IRA MA1JM, Domenica L. Marshall IRA MA1JK and Lucy M. Fero IRA FE1BP, Dale R. Marshall and Domenica L. Marshall owned a residence located at ████████ ████████ Osceola County, Florida (hereafter collectively "████████████ Defendants").

85.    Defendant Pensco Trust Company is a New Hampshire chartered trust company with a principal place of business in the State of California.

86     Defendants Dale R. Marshall and Domenica L. Marshall are domiciled in the state of Connecticut.

87.     At all material times, Defendant 37 Liberty Bluff, LLC (hereafter "37 Liberty Bluff, LLC Defendant"), a Florida limited liability company with its principal place of business in Florida, owned a residence located at ███████████████████ Osceola County, Florida.

88.     At all material times, Neekaytan Sharma, who is domiciled in the state of Florida, was and is the sole managing members of the 37 Liberty Bluff LLC Defendant.

89.     At all material times, Defendant Timothy Johnston (hereafter "Johnston Defendant"), who is a citizen of and domiciled in Canada, owned a residence located at ███ ████████████ Osceola County, Florida.

90.     At all material times, Defendant John Collins (hereafter "Collins Defendant"), who is a citizen of and domiciled in the United Kingdom of Great Britain and Northern Ireland, owned a residence located at ███████████████ Osceola County, Florida.

91.     At all material times, Defendants Michael R. Skrable and Laura A. Skrable (hereafter "Skrable Defendants"), who are domiciled in the state of Florida, owned a residence located at ███████████████ Osceola County, Florida.

92.     At all material times, Defendant L.O.D., LLC (hereafter "L.O.D., LLC Defendant"), a Delaware limited liability company with its principal place of business in the state of California, owned a residence located at ███████████████ Osceola County, Florida.

93.     At all material times, Wisam Costandi and Elodie Costandi, who are domiciled in the state of California, were and are the managing members of the L.O.D., LLC Defendant.

94.     At all material times, Defendants Michael Miller and Susan K. Miller, who are domiciled in the state of Ohio, owned a residence located at ███████████████ Osceola County, Florida (hereafter "Miller ███████████ Defendants").

95.     The amount in controversy exceeds the sum of $75,000, exclusive of interest.  All Defendants are citizens of different states and/or countries than the Plaintiff.  Therefore, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

96.     The Defendants identified in Paragraphs 6 through 94 are collectively hereafter referred to as the "Homeowner Defendants".

## VENUE

97.     Venue is proper in this District because the properties owned by the Homeowner Defendants (which will be defined once we insert all of the names of all of the homeowner defendants) which are the subject matter of this lawsuit are located within the district.

## THE VININGS POLICIES

98.     Vinings provided commercial general liability insurance to VCHI under policy number GLP001362100 effective March 4, 2007 to March 4, 2008 (the "2007 Policy).  A copy of the 2007 Policy is attached as Exhibit A.

99.     Vinings renewed coverage for VCHI as policy number GLP001362103 effective March 4, 2008 to March 4, 2009 (the "2008 Policy").  SSE was also listed as a named insured on the 2008 Policy.   A copy of the 2008 Policy is attached as Exhibit B.

100.    Vinings renewed coverage for VCHI and SSE, under policy number GLP001362104 effective March 4, 2009 to March 4, 2010.  The policy was cancelled on April 26, 2009 for nonpayment of premium.   A copy of the 2009 Policy is attached as Exhibit C.

101.    The 2007, 2008 and 2009 Policies each include a Self-Insured Retention endorsement as well as a Deductible Liability Insurance endorsement.   The Self-Insured Retention endorsement provides that a self-insured retention in the amount of $50,000 per occurrence shall apply to indemnity for all claims or suits for "property damage" insured within the products/completed operations hazard and arising out of each temporary or permanent dwelling unit sold without a 10 year home warranty.   The Deductible Liability Insurance endorsement provides that a $1,000 per occurrence deductible applies to "property damage" to homes that have a 10 year home warranty.

102.    The 2007, 2008 and 2009 Policies contain the following pertinent policy language:

**SECTION I- COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE**

1.      **Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

* * *

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory.

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)   Reports all, or any part of the "bodily injury" or "property damage" to us or any other insurer;

(2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

## SECTION V- DEFINITIONS

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

17.   "Property damage" means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

22.   "Your work":

a.   Means:

(1)   Work or operations performed by you or on your behalf; and

(2)   Materials, parts or equipment furnished in connection with such work or operations.

b.   Includes

(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

(2)   The providing of or failure to provide warnings or instructions.

103.    The 2007 and 2008 Policies also include the following relevant exclusion (form number CG 21 34 01 87):

**EXCLUSION – DESIGNATED WORK**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

1.      Arising out of the design, manufacture, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service correction or replacement of an **"exterior insulation and finish system"** (commonly referred to as synthetic stucco) or any part thereof, spray on siding or permanent coatings, any type of spray or exterior PVC resin, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.   For the purpose of this endorsement, an **"exterior insulation and finish system"** means an exterior cladding or finish system used on any part of any structure and consisting of:

    a.      a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

    b.      the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

    c.      a reinforced base coat; or

    d.      a finish coat providing texture and color.

2.      Arising out of any work or operations with respect to any exterior component, fixture or feature of any structure if an **"exterior insulation and finish system" or spray on siding product** is used on any part of that structure.

3.      Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a **"condominium project"** and/or **"community apartment project/co-operative project."**

    a.      For the purpose of this endorsement, **"condominium project"** means:

            A development consisting of condominiums.  A condominium consists of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit.

    b.      For the purpose of this endorsement **"community apartment project/co-operative"** means:

A development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.

4.       Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (5) stories.

**This exclusion applies to "your work" described above performed by you or on your behalf.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

This insurance does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

     104.   The 2009 policy includes the following relevant exclusion (form CG 21 34 01 87):

**EXCLUSION- DESIGNATED WORK**

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

1.       The design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction or replacement of any structure which exceeds (3) stories. This does not apply to interior on going or completed operations.

2.       Any work or operations with respect to any exterior component, fixture or feature of any structure if a **spray on siding product** is used on any part of that structure.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

## UNDERLYING FACTS

     105.  Between April 2003 and September 2007, VCHI constructed the residences currently owned by the O'Connell Defendant, Norton Defendants, Starynsky and Fraser ███ ██████████████████ Pastore Defendants, Greyhound Defendant, Etter Defendant, Foggitt Defendant, Horrocks Defendant, D'Entremont Defendants, Miller ██████████████

21

Defendants, Woodbery Defendant, Loveman Defendants, RLS Reunion Defendant, Purdy Defendants, Gentile Defendant, Taylor Defendant, Kubiesa Defendants, EMC Mortgage ███ ████████ Defendant, Comreco I LLC Defendant, Moreno Defendant, Starynsky and Fraser ██████████████ Defendants, 1223 Molona Holdings LLC Defendant, Babinski Defendants, Park Real Estate Defendant, Bryan and Stewart Defendants, Citibank Defendant, HSBC Defendant, Gallagher Defendants, Lord Defendant, George and Najor Defendants, Nuttall Defendants, Roberts Defendant, Gomez Defendants, Osceola Properties Defendant, Capretta Defendant, Plant Defendants, Holbrook Defendants, Burnett and Holt Defendants, Astley Defendants, Pepe Defendants, Roby Defendants, PFCB Grastara Defendant, IPS Trade Limited Defendant, Ingram Defendants, Bruno Defendants, Barry and Bartlett Defendants, Fletcher Defendants, Willis Defendants, Bulleid Defendants, Webster Defendants, Pennick Defendants, Bruno and Carmen LLC Defendant, Muirfield Real Estate, LLC Defendant, Campbell Defendants, Wortham-Waddy Defendant, Jackson Defendants, Preece Defendants, Ohayon Defendant, Smith Defendant, ████████████████ Defendants, 37 Liberty Bluff, LLC Defendant, Johnston Defendant, Collins Defendant, Skrable Defendants, L.O.D., LLC Defendant and Miller ██████████████ Defendants.

106.    Between April 2004 and November 2007, SSE completed construction of the residences owned by the Clegg Defendants, FCBF Defendant, Wandmacher Defendant, Saraceno Defendants, and Dibenedetto Defendant.

107.    Each of the residences owned by Homeowner Defendants includes an exterior finish system which, on information and belief, includes the following elements:

      a.    a cementitious base coat;

      b.    a cementitious finish coat; and

c.      decorative foam banding finished with a cementitious finish.

108.    On or about August 2007, Robert Booth and Shen-Jung Booth, owners of the residence located at ███████████████████ Osceola County, Florida, notified VCHI that water leaks occurred affecting the balcony system at their residence.

109.    In response to the complaint from the Booths, VCHI began inspecting the homes it built in Reunion for the Homeowner Defendants and by January 2008 knew, from either complaints received from a Homeowner Defendant or the results of its own inspections, that there were balcony leaks present at the residences presently owned by the Greyhound Defendant, the Gentile Defendant, the Comreco I LLC Defendant, the Citibank Defendant, the Lord Defendant, the Roberts Defendant, the Capretta Defendant, the Burnett and Holt Defendants, the Pepe Defendants, the Roby Defendants, the IPS Trade Limited Defendant, the Webster Defendants, the Pennnick Defendants, the PFCB Defendant (respecting the ██████████ address), the Jackson Defendants, the Preece Defendants, the Dibenedetto Defendant and the Ohayon Defendant.

110.    VCHI provided notice to Vinings of the Homeowners Defendants' claims starting in September 2008.  Vinings investigated the Homeowners Defendants' claims subject to a full reservation of rights.

111.    By letter dated March 15, 2010, Vinings has informed VCHI that it believes that there is no coverage under the 2007, 2008 or 2009 Policies for the claims presented by the Homeowners Defendants.

112.    On information and belief, VCHI disputes that there is no coverage for the Homeowners Defendants' claims under the 2007, 2008 and 2009 Policies.

113.   All conditions precedent to the initiation and maintenance of this action has been complied with have occurred or have been waived.

## COUNT I- DECLARATORY JUDGMENT AS TO THE HOMEOWNER DEFENDANTS' CLAIMS BEING PRECLUDED FROM COVERAGE UNDER THE 2008 AND 2009 POLICIES BECAUSE THEY WERE KNOWN TO A NAMED INSURED BEFORE THE 2008 POLICY INCEPTED ON MARCH 4, 2008

114.   Vinings re-alleges and adopts the allegations set forth in paragraphs 1-102, 105-106 and 108-113 as if fully set forth herein.

115.   Vinings is in doubt of its rights under the Policies and, by this Complaint, seeks a declaration of its rights and obligations under the Policies with respect to claims asserted by the Homeowner Defendants against VCHI and SSE.

116.   The claims for damage to the homes owned by each of the Homeowner Defendants were known to VCHI and SSE before the 2008 and 2009 Policies incepted and were reported by VCHI to Vinings before the 2009 Policy incepted.

117.   The Insuring Agreement of the 2008 and 2009 Policies specifically preclude coverage for any claim where any named insured knows of the damage asserted in the claim prior to the commencement of the policy period.

118.   Based upon the foregoing, an actual and present controversy exists between the parties to this action and this Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Vinings respectfully requests this Court to:

a.   Declare that Vinings has no duty to defend or indemnify VCHI or SSE under the 2008 or 2009 Policies for any damages sought by the Homeowner Defendants;

b.   Award any other relief that the Court finds to be appropriate under the evidence and other circumstances.

## COUNT II - DECLARATORY JUDGMENT AS TO THE DESIGNATED WORK EXCLUSION IN THE 2007 AND 2008 POLICIES AND THE EXTERIOR FINISH AND INSULATION SYSTEM EXCLUSION IN THE 2009 POLICY

117.    Vinings re-alleges and adopts the allegations set forth in paragraphs 1-107 and 110-113 as if fully set forth herein.

118.    Vinings is in doubt of its rights under the Policies and, by this Complaint, seeks a declaration of its rights and obligations under the Policies with respect to claims asserted by the Homeowner Defendants against VCHI and/or SSE.

119.    The homes owned by each of the Homeowner Defendants, including the balcony areas, include an "exterior insulation and finish system" as defined by the Policies.

120.    The 2007 and 2008 Policies exclude coverage for any exterior damage if any portion of the exterior of a residence includes an "exterior insulation and finish system."

121.    The 2009 Policy excludes coverage for any exterior damage if the damaged portion of the exterior of a residence includes an "exterior insulation and finish system."

122.    Based upon the foregoing, an actual and present controversy exists between the parties to this action and this Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Vinings respectfully requests this Court to:

a.    Declare that Vinings has no duty to defend or indemnify VCHI  and/or SSE under the 2007, 2008 or 2009 Policies for any damages sought by the Homeowner Defendants;

b.    Award any other relief that the Court finds to be appropriate under the evidence and other circumstances.

## COUNT III - DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE FOR SSE UNDER THE 2007 POLICY

123.    Vinings re-alleges and adopts the allegations set forth in paragraphs 1-2, 4-10, 95, 97-98, 106 and 110-113 as if fully set forth herein.

124.    Vinings is in doubt of its rights under the Policies and, by this Complaint, seeks a declaration of its rights and obligations under the Policies with respect to claims asserted by the Homeowner Defendants against SSE.

125.    The only named insured identified on the 2007 Policy is VCHI.

126.    SSE constructed the residences now owned by the Clegg Defendants, FCBF Defendant, Wandmacher Defendant, Saraceno Defendants and Dibenedetto Defendant (collectively the "SSE Homeowners").

127.    To the extent that there is any coverage afforded by the 2007 Policy for any Homeowner Defendant Claim, which Vinings denies because of the Designated Work Exclusion, there is no coverage for the claims presented by the SSE Homeowners because the entity which built their residence is not insured by the 2007 Policy.

128.    Based upon the foregoing, an actual and present controversy exists between the parties to this action and this Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Vinings respectfully requests this Court to:

    a.    Declare that Vinings has no duty to defend or indemnify SSE under the 2007 for any claim presented by the SSE Homeowners;

    b.    Award any other relief that the Court finds to be appropriate under the evidence and other circumstances.

## COUNT IV – DECLARATORY JUDGMENT AS TO APPLICABILITY OF SELF-INSURED RETENTION ENDORSEMENT TO CERTAIN HOMEOWNER DEFENDANT CLAIMS

129.    Vinings re-alleges and adopts the allegations set forth in paragraphs 1-2, 9-14, 95-101 and 110-113 as if fully set forth herein.

130.    Vinings is in doubt of its rights under the Policies and, by this Count, seeks a declaration of its rights and obligations under the Policies with respect to claims respecting the residences owned by the following Homeowner Defendants:

a.    Wandmacher Defendant – ▮▮▮▮▮▮▮▮

b.    Saraceno Defendants – ▮▮▮▮▮▮

c.    O'Connell Defendant – ▮▮▮▮▮▮

d.    Norton Defendants – ▮▮▮▮▮

e.    Pastore Defendants – ▮▮▮▮▮

f.    Starynsky and Fraser 1522 Euston Drive Defendants – ▮▮▮▮▮▮

131.    The 2007, 2008 and 2009 Policies each contain a Self-Insured Retention Endorsement which provides that a $50,000 self-insured retention applies for any claim where there is no homeowner warranty in place for the residence at issue.

132.    On information and belief, no homeowner warranty exists for the residences owned by the following Homeowner Defendants (hereafter referred to as the "No Homeowner Warranty Defendants"):

a.    Wandmacher Defendant – ▮▮▮▮▮▮▮▮

b.    Saraceno Defendants – ▮▮▮▮▮▮

c.    O'Connell Defendant – ▮▮▮▮▮▮

d.    Norton Defendants – ▮▮▮▮▮▮

     e.       Pastore Defendants – ███████████████

     f.       Starynsky and Fraser ████████████████ – ████████████

133.   To the extent that there is any coverage afforded by the 2007, 2008 or 2009 Policies for the Homeowner Defendants' Claims identified in Paragraph 132 above, which Vinings denies as asserted in Counts I through III above, VCHI/SSE must first satisfy their obligations under the Self-Insured Retention Endorsement.

134.   Based upon the foregoing, an actual and present controversy exists between the parties to this action and this Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Vinings respectfully requests this Court to:

     a.       Declare that Vinings has no duty to indemnify VCHI/SSE under the 2007, 2008 or 2009 policies for the No Homeowner Warranty Defendants until such time as VCHI/SSE first satisfies the Self-Insured Retention Endorsement by payment of $50,000 in damages covered by the applicable Policy;

     b.       Award any other relief that the Court finds to be appropriate under the evidence and other circumstances.

Respectfully submitted,

LISA A. OONK, ESQ.
Florida Bar No.: 0006238
Email: oonk@litchfieldcavo.com
MICHAEL K. MCCAFFERY, ESQ.
Florida Bar No. 69940
Email: mccaffery@litchfieldcavo.com
LITCHFIELD CAVO, LLP
5201 W. Kennedy Boulevard, Suite 450
Tampa, FL 33609
Telephone: (813) 289-0690
Facsimile: (813) 289-0692
Attorneys for *Vinings Insurance Company*